*428
 
 Opinion
 

 VARTABEDIAN, J.
 

 Appellant Robert Cortez contends the court erred in not permitting him to withdraw his guilty plea prior to sentencing. He also raises several issues concerning the three strikes sentencing law, pursuant to which he was sentenced. (Pen. Code, § 667, subds. (b)-(i).)
 
 [1]
 
 We reject his arguments; in the published portion of this opinion, we find a trial judge is not required to advise a defendant, upon his guilty plea, that the three strikes law limits his ability to earn conduct and work credits. We affirm the judgment.
 

 Facts and Procedural History
 

 On May 18, 1995, appellant had recently been released from prison and was living with the victim, G.C., and the couple’s 18-month-old child. Appellant had started working as a welder, a skill he learned in prison.
 

 On the evening of May 18,1995, appellant took phencyclidine (PCP) and got into an argument with G.C. He pushed her to the floor. He kicked and punched her in the face and body. He hit her on the side of the head with a telephone or an answering machine. Later, appellant told G.C. he would beat her again if she would not have sexual intercourse with him. They had intercourse.
 

 G.C. tried to call the police that evening, but appellant repeatedly took the telephone from her. The next morning, after appellant left for work, G.C. called the police to report she had been beaten. The responding officer saw that G.C. had a black eye, bruises on her neck and shoulder, one ear was red, and there were several lacerations on her arm. G.C. declined medical treatment and refused to submit to a sexual assault examination.
 

 Appellant was arrested on May 19, 1995. An amended information filed July 18, 1995, charged appellant with one count of forcible rape (§ 261, subd. (a)(2)) and one count of inflicting corporal injury on a cohabitant (§ 273.5). The amended information alleged that appellant had a prior serious felony conviction for purposes of section 667, subdivisions (a) and (d).
 

 At the time of trial (Aug. 29, 1995), appellant accepted a plea bargain in which he would admit the section 273.5 offense and his prior serious felony conviction in return for imposition of the mitigated term of imprisonment. The rape count would be dismissed with right to comment. Appellant
 
 *429
 
 acknowledged he would be sentenced under the three strikes law, and that the two-year mitigated term would be doubled to four years. The court received a change-of-plea form acknowledging that appellant would be sentenced under the three strikes law. The court accepted the guilty plea.
 

 At the time scheduled for sentencing on September 26, 1995, appellant informed the court he wanted to file a motion to withdraw the guilty plea.
 
 [2]
 
 The hearing was continued to October 3, 1995, and then to October 25, 1995. In a declaration submitted in support of the written motion, appellant said that after his attorney explained the sentence to him at the change of plea hearing, “it was to my understanding of explanation that due to circumstances of good time work time 80% of 4 years is 2 years 2 months. Which I later find, after entering my former plea is incorrect.” At the hearing, appellant said, “I believe that I am entitled, as well as my right, to be informed of the precise amount of time that I would do.”
 

 The trial court determined that appellant had not been advised in any way concerning postjudgment conduct credits. Rather, appellant was promised a four-year prison sentence, and that was the sentence to be imposed. The court specifically found that appellant pled guilty “knowingly, voluntarily and intelligently.” The court denied the motion to withdraw the guilty plea and sentenced appellant to four years in prison.
 

 Appellant filed a notice of appeal on December 6, 1995. On May 21, 1996, we deemed that a certificate of probable cause (§ 1237.5) had issued. Respondent’s subsequent motion for reconsideration of that order was denied on September 18, 1996.
 

 Discussion
 

 A.
 
 Failure to Admonish About Conduct Credits.
 

 At the time appellant entered his guilty plea, the court did not advise appellant that the three strikes law limits appellant’s ability to earn conduct and work credits while in prison.
 
 [3]
 
 Appellant contends the credits limitation is a direct consequence of his guilty plea, and that the court was required under
 
 Bunnell
 
 v.
 
 Superior Court
 
 (1975) 13 Cal.3d 592, 605 [119
 
 *430
 
 Cal.Rptr. 302, 531 P.2d 1086], to advise him of that consequence. Further, appellant argues that in the absence of such an admonition his guilty plea was not voluntarily and intelligently made.
 
 (People
 
 v.
 
 Howard
 
 (1992) 1 Cal.4th 1132, 1178 [5 Cal.Rptr.2d 268, 824 P.2d 1315].)
 

 Appellant relies primarily on this court’s opinion in
 
 People
 
 v.
 
 Tabucchi
 
 (1976) 64 Cal.App.3d 133 [134 Cal.Rptr. 245]. In that case, decided under the Indeterminate Sentence Law, defendant pled guilty to a crime punishable by a sentence of five years to life. Under ordinary circumstances, the Indeterminate Sentence Law provided for parole eligibility upon completion of one-third of the minimum term. The offense to which defendant pled guilty, by contrast, was subject to a special provision that required defendant to serve three years of his sentence before he became eligible for parole. In his motion to withdraw his guilty plea, defendant stated that he did not know about the special parole limitation at the time of his guilty plea.
 

 The
 
 Tabucchi
 
 court held that since this claim of misunderstanding was “plausible on its face” and the record did not show defendant had been advised to the contrary, the trial court abused its discretion in failing to grant defendant’s section 1018 motion. (64 Cal.App.3d at p. 143.) The court held that “notice to a defendant of any
 
 statutorily required
 
 minimum term for parole eligibility . . . contrary to and of greater duration than the usual Adult Authority policy ... is constitutionally required as a prerequisite to entry of a [knowing and intelligent] guilty plea .... Such a minimum term for parole eligibility must be deemed a direct rather than a collateral consequence of the guilty plea.”
 
 (Ibid.)
 

 Subsequent case law has distinguished
 
 Tabucchi
 
 in two particulars relevant to the present case. First, a defendant does not have to be advised of the
 
 ordinary
 
 minimum term before parole eligibility.
 
 (People
 
 v.
 
 Huynh
 
 (1991) 229 Cal.App.3d 1067, 1081-1083 [280 Cal.Rptr. 506].) Second, the did not information must make the plea bargain less attractive than it appeared to be without the admonition.
 
 (People
 
 v.
 
 Hellgren
 
 (1989) 208 Cal.App.3d 854, 858 [256 Cal.Rptr. 465].) (Thus, in
 
 Hellgren
 
 the court did not inform the defendant of the lower and middle statutory prison sentences; instead it simply- informed defendant of-the maximum available sentence. The court held that “the advice—that there could be a prison term
 
 less
 
 than the three years which defendant was willing to accept—could only have made the plea seem more attractive. There was no prejudice” to defendant in failing to advise of the lower terms.
 
 (Ibid.)
 
 )
 

 
 *431
 
 In the present case, appellant was advised that he would be sentenced under the three strikes law. Since the conduct credit limitation contained in that law broadly applies to all persons sentenced thereunder, we conclude the trial court was not required to advise appellant of the ordinary limitations on conduct credits. (See
 
 People
 
 v.
 
 Huynh, supra,
 
 229 Cal.App.3d at p. 1082.) Accordingly, advisement that sentencing would be pursuant to the three strikes law adequately and implicitly informed appellant of his limited eligibility for early release on parole.
 

 Further, as the trial court ruled in this case, on the face of the record appellant agreed to receive a four-year prison sentence under the plea bargain. The court’s failure to advise him that he in fact might be released on parole earlier could only make the sentence more attractive, not less. Accordingly, appellant was not prejudiced by the failure to advise him about conduct credits. (See
 
 People
 
 v.
 
 Hellgren, supra,
 
 208 Cal.App.3d 858.)
 
 [4]
 

 Finally, we do not view conduct and work credits as a consequence of the guilty plea; instead, they are a consequence of the defendant’s conduct after he arrives at prison. The traditional “direct consequences” of a plea are those which follow inexorably from the plea. (See
 
 In re Carabes
 
 (1983) 144 Cal.App.3d 927, 930-931 [193 Cal.Rptr. 65] [postsentence period of parole as inexorable consequence of guilty plea].) By contrast, conduct and work credits depend on the behavior of the prisoner and the availability of work programs within the particular prison setting.
 
 (People
 
 v.
 
 Huynh, supra,
 
 229 Cal.App.3d at p. 1082.)
 
 People
 
 v.
 
 Bunnell, supra,
 
 13 Cal.3d 592, does not require the trial court to review Department of Corrections regulations and policy manuals with a defendant prior to his guilty plea.
 
 (People
 
 v.
 
 Huynh, supra,
 
 at p. 1083 [“We will not require trial courts to read the Board of Prison Term’s parole eligibility regulations to defendants in anticipation of a guilty plea or a
 
 Bunnell
 
 submission.”].) We conclude the court did not err in failing to explain conduct credit limitations to appellant.
 

 B.
 
 Three Strikes Issues.
 

 *
 

 
 *432
 

 Disposition
 

 The judgment is affirmed.
 

 Dibiaso, Acting P. J., and Buckley, J., concurred.
 

 A petition for a rehearing was denied June 16, 1997, and appellant’s petition for review by the Supreme Court was denied September 17, 1997.
 

 [1]
 

 A11 further statutory references are to the Penal Code.
 

 [2]
 

 Section 1018 states, in relevant part: “On application of the defendant at any time before judgment or within six months after an order granting probation is made if entry of judgment is suspended, the court may . . . , for a good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted. . . . This section shall be liberally construed to effect these objects and to promote justice.”
 

 [3]
 

 Section 667, subdivision (c)(5) provides: “The total amount of credits awarded pursuant to Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3 shall not exceed
 
 *430
 
 one-fifth of the total term of imprisonment imposed and shall not accrue until the defendant is physically placed in the state prison.”
 

 [4]
 

 We also note that, once the three strikes information was filed, a plea bargain that called for dismissal of the prior conviction allegation (thereby permitting unlimited conduct credits under the Determinate Sentencing Act of 1976) was statutorily prohibited. (§ 667, subd. (g).) Accordingly, there was no available mechanism by which appellant could have received a sentence more favorable to him in terms of conduct credit availability, as long as the prior serious felony conviction was provable.
 

 *
 

 See footnote
 
 ante,
 
 page 426.