[No. S065511. May 6, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
GEORGE EDWARD BARELLA, Defendant and Appellant.

**COUNSEL**

Gerry W. McGee, under appointment by the Supreme Court, for Defendant and Appellant.

Daniel E. Lungren and Bill Lockyer, Attorneys General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Stan M. Helfman and Christopher W. Grove, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**GEORGE, C. J.**—In *People* v. *Cortez* (1997) 55 Cal.App.4th 426 [64 Cal.Rptr.2d 71] (*Cortez*), the Court of Appeal for the Fifth Appellate District held that a trial judge is not required to advise a defendant, upon his or her guilty plea, that the "Three Strikes" law (Pen. Code §§ 667, subds. (b)-(i), 1170.12) limits the defendant's ability to earn conduct and work credits while incarcerated.[1] In the present case, the Court of Appeal for the First Appellate District (Division Three) expressly disagreed with the reasoning set forth in *Cortez*, instead determining that in sentencing under the Three Strikes law, the trial court was required to advise defendant, prior to his guilty plea, that he was ineligible for parole until he had served four-fifths of his sentence. We granted the People's petition for review to resolve the conflict.

---

[1]Unless otherwise indicated, all further statutory references are to the Penal Code.

As we shall explain, the United States Supreme Court has stated that a defendant's parole eligibility date is not a direct consequence of which a defendant must be apprised before pleading guilty. (*Hill* v. *Lockhart* (1985) 474 U.S. 52, 55-56 [106 S.Ct. 366, 368-369, 88 L.Ed.2d 203].) The credit limitation contained within the Three Strikes law serves a role functionally equivalent to a parole eligibility date, and we conclude that neither the federal or the state Constitution, nor California's judicially declared rules of criminal procedure, required the trial court to advise defendant, prior to his guilty plea, that he would be ineligible for release from prison until he had served four-fifths of his sentence. We therefore reverse the judgment of the Court of Appeal.

## I.

The facts of this case, derived from the probation officer's report, are undisputed. Having received information from a confidential informant that defendant was a seller of heroin, Lake County Narcotics Task Force officers conducted a surveillance of defendant's apartment on August 23, 1995. Officers observed Robert Bounty, a suspected "customer" of defendant's, arrive at the apartment, after which the two men entered Bounty's vehicle and drove away, returning approximately thirty minutes later. When officers thereafter approached, defendant started to walk away. He ignored orders to stop and physically resisted arrest, throwing a "hype-kit" (i.e., drug paraphernalia) and a package of heroin over a fence during the struggle. Officers recovered the "hype-kit" and .28 grams of heroin.

Defendant subsequently waived his constitutional rights and provided a written statement to the police, acknowledging that he "threw some heroin down." He stated, however, that the heroin was for personal use, not for sale. Bounty also provided a statement, admitting that he went to defendant's apartment for the purpose of obtaining heroin; defendant told Bounty he was out of heroin; Bounty agreed to drive defendant to another location to acquire some, and in return, defendant agreed to give Bounty some heroin.

On October 20, 1995, defendant was charged by amended complaint with possession of heroin (Health & Saf. Code, § 11350) and misdemeanor resisting arrest. (§ 148, subd. (a).) The complaint alleged that defendant had suffered prior serious felony convictions ("strikes") for burglary (§ 459) and robbery (§ 211) within the meaning of the Three Strikes law.

On November 17, 1995, pursuant to a plea agreement, defendant pleaded guilty to possession of heroin and admitted a single prior serious felony conviction, and the court dismissed the count that charged resisting arrest.

On or about December 8, 1995, defendant received the probation officer's report, which contained a statement referring to section 1170.12, subdivision (a)(5).[2] This statutory provision—commonly known as the "4/5 Rule"—provides that "[t]he total amount of credits awarded [under the statutes governing good time and work time credit] shall not exceed one-fifth of the total term of imprisonment imposed . . . ." (§ 1170.12, subd. (a)(5).) Thus, each defendant sentenced under the Three Strikes law generally must serve at least four-fifths of his or her sentence prior to becoming eligible for parole.

On February 13, 1996, defendant moved to withdraw his guilty plea, contending that he had been unaware of the 4/5 Rule. His declaration explained that when he entered his guilty plea, ". . . I understood this conviction carried a possible sentence of 16 months, two years, or three years in State Prison and further that whatever sentence I received would be doubled. I discussed these matters with my attorney, Mr. Max Ruffcorn, before the sentencing. I was *not* advised, by Mr. Ruffcorn nor was I aware, that in addition to the sentence[] being doubled, due to a prior conviction for violation of Penal Code section 211, I would also have to serve 80 percent of any sentence imposed. It was my understanding I would receive 50 percent credit for good time and work time and I expected if I received the upper term of six years I would only have to serve three [years]. It was not until after I entered the plea and was returned to the jail that I learned, upon receipt of the probation report, the sentence would be subject to only a 20 percent reduction for good time and work time. [¶] Had I been aware the sentence imposed . . . was subject only to a 20 percent reduction I would not have entered my plea." (Italics in the original.)

On February 16, 1996, the court heard defendant's motion to withdraw his plea. Defendant testified that his attorney advised him that he faced a three-year sentence for the possession charge and an additional two years for his prior felony, for a total of five years. According to defendant, "nothing was mentioned about the 80 percent" requirement contained in the Three Strikes law; instead, defendant believed he would receive "half-time" cred-its—i.e., a one-day reduction in the length of his sentence for each day of incarceration actually served. Defendant reiterated that he would not have

---

[2]Section 1170.12, subdivision (a)(5), in pertinent part provides: "The total amount of credits awarded . . . shall not exceed one-fifth of the total term of imprisonment imposed and shall not accrue until the defendant is physically placed in the state prison."

Section 1170.12, subdivision (a)(5), added by initiative (Gen. Elec., Nov. 8, 1994 [Proposition 184]), is identical to the legislative version of the Three Strikes law, codified at section 667, subdivision (c)(5).

entered a guilty plea had he known that he would be required to serve at least 80 percent of his sentence. The trial court denied defendant's motion.[3]

Shortly thereafter, the court sentenced defendant to six years in prison, representing the upper term for the possession charge, doubled, pursuant to section 1170.12, subdivision (c)(1). Defendant filed a timely notice of appeal and obtained a certificate of probable cause (§ 1237.5).

The Court of Appeal reversed the trial court's denial of defendant's motion to withdraw the plea, concluding that the credit limitation contained within the Three Strikes law "falls within the *Boykin-Tahl-Bunnell* requirement of advisement as to sentencing range and other direct consequences of a guilty plea," thus requiring the trial court to advise defendant that, in consequence of his plea, he would serve a minimum of four-fifths of the sentence before becoming eligible for parole.[4] We thereafter granted the People's petition for review.

## II.

### A.

In considering the parties' respective positions regarding the trial court's responsibility to provide parole eligibility advisements upon the entry of defendant's guilty plea, it is instructive briefly to consider prior pronouncements of the United States Supreme Court and of this court, upon which the Court of Appeal ostensibly relied. ██ As the following discussion makes clear, the question whether the trial court was required to advise defendant that he would be ineligible for parole until he had served four-fifths of his prison term, turns on whether the 4/5 Rule properly should be characterized as a "direct" or "collateral" consequence of defendant's plea, within the meaning of the controlling decisions.

---

[3]The trial court found: "The Defendant's testimony is somewhat at variance with his declaration. His declaration seems to clearly state that he was aware th[at] his sentence would be doubled and not that it just be an additional two years.

"But that does not seem to be the central part of his argument. His argument is clearly that he didn't know that his behavioral credits were limited to 20 percent of the time imposed.

"And the Court finds that to be a collateral matter. It would be impossible to advise the Defendant as to all of the eventualities that might occur in the prison system.

"Things may occur which would cause his behavioral credits to be taken away for other conduct. And those things can't be advised.

"I don't find that this is something for which the Court is required to or could adequately advise the Defendant about. So the motion to withdraw the plea is denied.

"With regard to the sentence given, the Defendant[] alleges that he feels that Mr. Ruffcorn may have misadvised him or didn't advise him fully."

[4]*Boykin* v. *Alabama* (1969) 395 U.S. 238 [89 S.Ct. 1709, 23 L.Ed.2d 274] (*Boykin*); *In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449] (*Tahl*); *Bunnell* v. *Superior Court* (1975) 13 Cal.3d 592 [119 Cal.Rptr. 302, 531 P.2d 1086] (*Bunnell*).

In *Boykin, supra*, 395 U.S. 238, the United States Supreme Court held that "[i]t was error . . . for the trial judge to accept petitioner's guilty plea without an affirmative showing that it was intelligent and voluntary." (*Id.* at p. 242 [89 S.Ct. at p. 1711].) "What is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." (*Id.* at pp. 243-244 [89 S.Ct. at p. 1712]; see also *Brady* v. *United States* (1970) 397 U.S. 742, 755 [90 S.Ct. 1463, 1472, 25 L.Ed.2d 747] [" ' "[A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats . . . , misrepresentation . . . ," ' " or improper promises.].)

In *Tahl, supra*, 1 Cal.3d 122, this court held that in order to comply with the requirements of *Boykin*, in all cases in which the trial court accepts a guilty plea: "[T]he record must contain *on its face* direct evidence that the accused was aware, or made aware, of his right to confrontation, to a jury trial, and against self-incrimination, as well as the nature of the charge and the consequences of his plea. Each must be enumerated and responses elicited from the person of the defendant." (*Id.* at p. 132, italics in the original.)

■ In *Bunnell, supra*, 13 Cal.3d 592, we elaborated: "In all guilty plea and submission cases the defendant shall be advised of the direct consequences of the conviction such as the permissible range of punishment provided by statute . . . ." (*Id.* at p. 605.) Although we recognized in *Bunnell* that the *Boykin-Tahl* advisements might not be constitutionally required in all circumstances, we concluded that in the interest of justice it was appropriate to adopt a judicially declared rule of criminal procedure, requiring the giving of certain advisements in a broad category of cases.

In subsequent decisions, we have clarified that "[u]nlike the admonition of constitutional rights, . . . advisement as to the consequences of a plea is not constitutionally mandated. Rather, the rule compelling such advisement is 'a judicially declared rule of criminal procedure.' " (*People* v. *Walker* (1991) 54 Cal.3d 1013, 1022 [1 Cal.Rptr.2d 902, 819 P.2d 861], quoting *People* v. *Wright* (1987) 43 Cal.3d 487, 495 [233 Cal.Rptr. 69, 729 P.2d 260].) ■ Accordingly, the question in this case is whether the limitation upon the amount of good time or work time credit that a defendant may earn in prison should properly be characterized as a "direct consequence" within the meaning of the judicially declared rule of criminal procedure set forth in *Bunnell*.

The United States Supreme Court has "never held that the United States Constitution requires the State to furnish a defendant with information about parole eligibility in order for the defendant's plea of guilty to be voluntary. . . ." (*Hill* v. *Lockhart, supra,* 474 U.S. 52, 56 [106 S.Ct. 366, 369].) Numerous other courts similarly have concluded that there exists no federal requirement, constitutional or otherwise, that the trial court admonish the defendant regarding parole eligibility factors as a condition of a valid guilty plea. (See *U.S.* v. *Roberts* (9th Cir. 1993) 5 F.3d 365, 368; *Fama* v. *U.S.* (2d Cir. 1990) 901 F.2d 1175, 1178; *U.S.* v. *Ballard* (5th Cir. 1990) 919 F.2d 255, 258; *Johnson* v. *Puckett* (5th Cir. 1991) 930 F.2d 445, 448, fn. 2; *Holmes* v. *U.S.* (11th Cir. 1989) 876 F.2d 1545, 1548-1549; *U.S.* v. *Sanclemente-Bejarano* (9th Cir. 1988) 861 F.2d 206, 208-209; *U.S.* v. *Garcia* (5th Cir. 1981) 636 F.2d 122, 123; *Johnson* v. *United States* (1st Cir. 1981) 650 F.2d 1, 4; *Hunter* v. *Fogg* (2d Cir. 1980) 616 F.2d 55, 61; *Johnson* v. *Dees* (5th Cir. 1978) 581 F.2d 1166, 1167.) The principle to be gleaned from these authorities is that "parole eligibility is a collateral rather than a direct consequence of a guilty plea." (*Holmes* v. *U.S., supra,* 876 F.2d 1545, 1549; see also *People* v. *Maury* (1997) 287 Ill.App.3d 77 [222 Ill.Dec. 623, 678 N.E.2d 30, 32-34] ["good time" sentence reduction credits constitute a collateral consequence of the plea]; *Commonwealth* v. *Brown* (Mass. 1978) 372 N.E.2d 530 [same]; *Johnson* v. *Dees, supra,* 581 F.2d 1166, 1167 [same]; see also Fed. Rules Crim.Proc., rule 11(c), 18 U.S.C. [governing the entry of guilty pleas in federal courts]; Advisory Com. Notes on 1974 Amend., Fed. Rules Crim.Proc., rule 11(c), 18 U.S.C. [federal courts generally are not required to inform defendant of parole eligibility before accepting guilty plea].)

Although this court has not addressed the question whether a defendant's parole eligibility date represents a direct or collateral consequence of a plea for purposes of the *Bunnell* rule, a number of California's intermediate appellate courts have done so, reaching varying results. We examine these cases below.

In *People* v. *Tabucchi* (1976) 64 Cal.App.3d 133 [134 Cal.Rptr. 245] (*Tabucchi*), a case that preceded *Hill* v. *Lockhart, supra,* 474 U.S. 52, as well as the other judicial authority cited above, the defendant pleaded guilty to one count of transportation and sale of phencyclidine, a controlled substance. (Health & Saf. Code, former § 11379.) The trial court dismissed additional drug-related charges that had been filed against him and his wife. He was sentenced to five years to life in state prison. (*Tabucchi, supra,* 64 Cal.App.3d at p. 137.) At the time, the Indeterminate Sentence Law provided for parole eligibility upon the completion of one-third the minimum term. (Former § 3049.) The offense to which the defendant pleaded guilty, however, required him to serve a minimum of three years of his sentence prior to

becoming eligible for parole. (Health & Saf. Code, former § 11379, subd. (a).) The defendant had not been advised of this mandatory minimum term of imprisonment. (*Tabucchi, supra,* 64 Cal.App.3d at p. 142.)

Recognizing the "critical importance to a defendant of the right to parole," as well as "the widespread knowledge of persons charged with crime concerning the 'one-third minimum time' parole policy of the Adult Authority in usual cases," the court in *Tabucchi* held that "notice to a defendant of any *statutorily required* minimum term for parole eligibility . . . contrary to and of greater duration than the usual Adult Authority policy based on Penal Code section 3049, is constitutionally required as a prerequisite to entry of a guilty plea under the rationale of *In re Tahl, supra*[, 1 Cal.3d 122]. Such a minimum term for parole eligibility must be deemed a direct rather than a collateral consequence of the guilty plea. (Cf. *People* v. *Searcie* (1974) 37 Cal.App.3d 204 [112 Cal.Rptr. 267]; *People* v. *Flores* (1974) 38 Cal.App.3d 484 [113 Cal.Rptr. 272].) [¶] . . . [¶] . . . Since it has been a matter of common knowledge for many years that in the usual case, assuming good behavior in prison, a defendant will be eligible for parole after serving one-third of the minimum term of punishment, [the defendant's] assertion that he was under such an impression when he entered his plea is plausible on its face." (*Tabucchi, supra,* 64 Cal.App.3d at p. 143, original italics.)

The court in *Tabucchi* concluded that because the record did not reveal that the defendant was required to serve three years in state prison before he was eligible for parole, instead reflecting that the defendant had entered his plea on the mistaken belief that he would be eligible for parole in twenty months, he had sustained his burden of showing good cause, and thus the trial court had abused its discretion in not permitting the defendant to withdraw his plea of guilty. (64 Cal.App.3d at p. 144.)

In *People* v. *Huynh* (1991) 229 Cal.App.3d 1067 [281 Cal.Rptr. 785] (*Huynh*), the court interpreted *Tabucchi* as requiring judicial advice regarding a defendant's eligibility for parole "only where the usual eligibility rules are inapplicable." (*Id.* at p. 1081.) In *Huynh*, defense counsel stated on the record that the defendant would be eligible for parole in seven years if convicted of second degree murder with personal use of a firearm. The prosecutor stated that the defendant would be eligible for parole after "seven or eight years," and the trial court so advised the defendant. (*Id.* at p. 1080.) Following a bench trial, the court found the defendant guilty of second degree murder and sentenced him to a prison term of 17 years to life. (*Id.* at p. 1071.) The trial court did not advise the defendant of the guidelines of the Board of Prison Terms (Cal. Code Regs., tit. 15, §§ 2400, 2403, subd. (c)), however, which specified that a defendant convicted of second degree

murder with personal use of a firearm ordinarily would not be eligible for parole prior to the expiration of two-thirds of 17 years—i.e., 11 years, 4 months. (*Huynh, supra,* 229 Cal.App.3d at p. 1081.) The court in *Huynh* held that because the "defendant's possible parole is dependent on the Board of Prison Term's evaluation of his conduct as a prisoner," the "ordinary minimum term before parole eligibility" is *not* "a direct consequence of a conviction." (*Id.* at p. 1082.) Under the reasoning of the court in *Huynh,* judicial advisement of the minimum date for parole eligibility is a requirement only where the *usual* parole rules do not apply. (See also *People* v. *Crosby* (1992) 3 Cal.App.4th 1352, 1355 [5 Cal.Rptr.2d 159] ["A collateral consequence is one which does not 'inexorably follow' from a conviction of the offense involved in the plea."].)

B.

In the present case, after reviewing the *Tabucchi* and *Huynh* decisions, the Court of Appeal observed: "[T]he question remains whether the 4/5 Rule is *usual* within the meaning of *Tabucchi* as limited by *Huynh.*" The court noted that this issue had been addressed in *Cortez, supra,* 55 Cal.App.4th 426.

In *Cortez,* the defendant was charged with one count of forcible rape (§ 261, subd. (a)(2)) and one count of inflicting corporal injury on a cohabitant (§ 273.5). The amended information alleged that the defendant had a prior serious felony conviction. As part of a plea agreement, the defendant pleaded guilty to having committed the section 273.5 offense and admitted his prior serious felony conviction, in return for imposition of a two-year term of imprisonment (to be doubled to four years under the Three Strikes law) and dismissal of the rape count. (*Cortez, supra,* 55 Cal.App.4th at pp. 428-429.) At the time scheduled for sentencing, the defendant informed the court that he wished to file a motion to withdraw his guilty plea. In a declaration submitted in support of the motion, the defendant stated that " 'my understanding [was] that due to circumstances of good time [and] work time[,] 80% of 4 years is 2 years 2 months. Which I later find, after entering my former plea[,] is incorrect.' " (*Id.* at p. 429.)

The trial court in *Cortez* determined that the defendant had not been advised concerning postjudgment conduct credits, and instead was promised a four-year prison sentence—the sentence to be imposed. Concluding that the defendant's plea was made "knowingly, voluntarily and intelligently," the trial court denied the motion to withdraw the guilty plea and sentenced the defendant to four years in prison. (55 Cal.App.4th at p. 429.)

In affirming the judgment of the trial court, the Court of Appeal in *Cortez* held that the defendant had been advised that he would be sentenced under

the Three Strikes law. "Since the conduct credit limitation contained in that law broadly applies to all persons sentenced thereunder, we conclude the trial court was not required to advise [the defendant] of the ordinary limitations on conduct credits. (See *People* v. *Huynh, supra,* 229 Cal.App.3d [1067,] 1082.) Accordingly, advisement that sentencing would be pursuant to the [T]hree [S]trikes law adequately and implicitly informed [him] of his limited eligibility for early release on parole.

"Further, as the trial court ruled in this case, on the face of the record [the defendant] further agreed to receive a four-year prison sentence under the plea bargain. The court's failure to advise him that he in fact might be released on parole earlier could only make the sentence more attractive, not less. Accordingly, [the defendant] was not prejudiced by the failure to advise him about conduct credits. (See *People* v. *Hellgren* [(1989)] 208 Cal.App.3d [854,] 858 [256 Cal.Rptr. 465].)

"Finally, we do not view conduct and work credits as a consequence of the guilty plea; instead, they are a consequence of the defendant's conduct after he arrives at prison. The traditional 'direct consequences' of a plea are those which follow inexorably from the plea. (See *In re Carabes* (1983) 144 Cal.App.3d 927, 930-931 [193 Cal.Rptr. 65] [postsentence period of parole as inexorable consequence of guilty plea].) By contrast, conduct and work credits depend on the behavior of the prisoner and the availability of work programs within the particular prison setting. (*People* v. *Huynh, supra,* 229 Cal.App.3d at p. 1082.) *People* v. *Bunnell* [(1975)] 13 Cal.3d 592 [119 Cal.Rptr. 302, 531 P.2d 1086], does not require the trial court to review Department of Corrections regulations and policy manuals with a defendant prior to his guilty plea. (*People* v. *Huynh, supra,* at p. 1083 ['We will not require trial courts to read the Board of Prison Term's parole eligibility regulations to defendants in anticipation of a guilty plea or a *Bunnell* submission.'].) We conclude the court did not err in failing to explain conduct credit limitations to [the defendant]." (55 Cal.App.4th 426, 431, fn. omitted.)

As noted, the Court of Appeal in the present case expressly disagreed with *Cortez,* observing that the reasoning in that opinion "fails to address the troubling prospect of a lack of notice where the prosecution negotiates a guilty plea with a defendant under a new and different sentencing scheme." Characterizing the Three Strikes law as a "complicated piece of legislative reform," the Court of Appeal held that it was "unlikely" the public debate surrounding the law's enactment "effectively educated the general public to the extent that the new law can be said to be in any sense 'usual.' Since the Three Strikes sentencing provisions are a major departure from the previous,

widely understood sentencing scheme, we conclude that it is *unusual* within the meaning of *Tabucchi*." (Original italics.) Accordingly, the Court of Appeal concluded that "the 4/5 Rule falls within the *Boykin-Tahl-Bunnell* requirement of advisement as to sentencing range and other direct consequences of a guilty plea." Further, the court found sufficient prejudice to warrant reversal.

## C.

In characterizing the issue presented as one involving whether the Three Strikes law was "unusual" within the meaning of *Tabucchi*, we believe the Court of Appeal failed to consider appropriately the relevant federal and California cases postdating that decision. As we have seen, a significant body of federal case law decided after *Tabucchi*—including the United States Supreme Court's decision in *Hill* v. *Lockhart, supra*, 474 U.S. 52, 55-56 [106 S.Ct. 366, 368-369]—has held that a trial court is *not* obligated to advise a defendant regarding parole eligibility factors as a condition of a valid guilty plea. *Tabucchi*'s holding that advice as to parole eligibility "is constitutionally required" (64 Cal.App.3d 133, 143) also is inconsistent with our own subsequent holding that "[u]nlike the admonition of constitutional rights . . . advisement as to the consequences of a plea is not constitutionally mandated." (*People* v. *Walker, supra*, 54 Cal.3d 1013, 1022; see also *People* v. *Reed* (1998) 62 Cal.App.4th 593 [72 Cal.Rptr.2d 615] [criticizing *Tabucchi* as being inconsistent with *Walker* and federal authorities].)

In concluding that the Constitution requires a trial court expressly to advise a defendant of the 4/5 Rule in view of the "new" and "complicated" nature of the Three Strikes law, the Court of Appeal failed to consider whether the opinion in *Tabucchi* correctly reflects current law. The appellate court in the proceedings below also deviated from the "direct consequence" standard we articulated in *Bunnell, supra*, 13 Cal.3d 592, 605 (requiring that a defendant be advised of "the permissible range of punishment provided by statute . . . ."). Under the vague and impractical test articulated by the Court of Appeal, trial courts would be responsible for advising defendants of a myriad of contingencies related to eligibility for good-time or work-time credits—an unduly burdensome task and one unnecessary to ensure the voluntariness of a guilty plea.

Numerous factors inform the decision to release an inmate into law-abiding society, and courts need not inform the defendant of all the contingencies and possibilities that may ensue from a plea of guilty. Nor does the fair and efficient administration of justice require that the trial court inform

the defendant of the theoretical minimum portion of a sentence that will have to be served in custody (taking into account potential in-prison conduct or work credits) when he or she pleads guilty to a term whose potential length may be greater; such knowledge, although important to the defendant who pleads guilty, is not required to facilitate a knowing and intelligent decision to plead. (See *Hunter* v. *Fogg*, *supra*, 616 F.2d 55, 61.) An advisement of the statutory or stipulated sentence—without reference to permissible credits—is sufficient.

In accord with *Cortez* and the numerous out-of-state decisions cited above, we conclude that a defendant is not entitled to withdraw or set aside a guilty plea on the ground that the trial court, in accepting the plea, failed to advise the defendant of a limit on good-time or work-time credits available to the defendant. To the extent it is inconsistent with this conclusion, *Tabucchi*, *supra*, 64 Cal.App.3d 133, is disapproved.

The Court of Appeal also held that even if the credit limitation were not a direct consequence of a guilty plea, defendant was entitled to have his plea set aside on appeal on the ground that his trial counsel was ineffective in failing to advise defendant of the 4/5 Rule. Because the record on appeal does not definitively establish whether or not counsel so advised defendant (beyond defendant's bare assertion that he did not), or whether if defendant had been so advised, he in fact would not have entered into the apparently favorable plea agreement resulting in the elimination of one "strike" that potentially could have subjected defendant to a life sentence, defendant's claim of ineffective assistance of counsel should be resolved in a habeas corpus proceeding rather than on appeal. (*People* v. *Mendoza Tello* (1997) 15 Cal.4th 264, 265-266 [62 Cal.Rptr.2d 437, 933 P.2d 1134].) The Court of Appeal thus erred in reversing the judgment on this ground.

### III.

The judgment of the Court of Appeal is reversed, and the matter is remanded to the Court of Appeal for further proceedings consistent with this opinion.

Mosk, J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Brown, J., concurred.