Filed 8/20/20  P. v. Montanez CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G056914, G058377 |
| v. | (Super. Ct. No. 15NF1063) |
| DANNY MONTANEZ, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Kimberly Menninger, Judge.  Conditionally reversed with limited remand.

Mark D. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel and Tami Falkenstein Hennick, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

## INTRODUCTION

A jury convicted Danny Montanez of premeditated and deliberate attempted murder and assault with a deadly weapon, and found true enhancements for infliction of great bodily injury and personal use of a deadly weapon. The trial court sentenced Montanez to an indeterminate term of life with the possibility of parole after seven years for attempted murder, a concurrent six-year term for the enhancements, and a consecutive four-year term for assault with a deadly weapon. Montanez argues his trial counsel was ineffective because counsel allegedly had advised him to reject a pretrial plea offer in which he would have received a 13-year determinate sentence. Barring reversal on that ground, Montanez argues the matter should be remanded for the trial court to determine whether he should be granted diversion for mental disorders pursuant to Penal Code sections 1001.35 and 1001.36 (further code citations are to the Penal Code).

We agree with the Attorney General that Montanez's claim of ineffective assistance of counsel cannot be reviewed on direct appeal and should be raised by petition for writ of habeas corpus. We agree with Montanez that he is eligible to be considered for diversion under sections 1001.35 and 1001.36. The California Supreme Court, in *People v. Frahs* (2020) 9 Cal.5th 618 (*Frahs*), held that sections 1001.35 and 1001.36 apply retroactively to all cases not yet final on appeal. Although a defendant convicted of murder is not eligible for diversion (§ 1001.36, subd. (b)(2)(A)), Montanez was convicted of attempted murder.

In accordance with *Frahs*, we conditionally reverse the judgment with a remand limited to determining whether Montanez is eligible for diversion under section 1001.36. (*Frahs, supra,* 9 Cal.5th at pp. 640-641.)

## FACTS

On April 18, 2015, David Lee, who was homeless and sleeping outside of a CVS Pharmacy in Fullerton, approached Montanez, whom he had never seen before, told

him he had money, and asked about buying marijuana. After Montanez said nothing in response, Lee walked across the street to get a soft drink.

About an hour later, Lee returned to his spot outside of the CVS, spread out his sheet, and prepared to take a nap. As Lee was lying down, Montanez ran up to him and stabbed him with a knife 10 to 15 times in the neck, back, shoulder, and face. Lee suffered, among many other injuries, a collapsed lung, two broken ribs, and a fractured spine.

Fullerton police detective M. Greene was dispatched to the scene of the stabbing. On arriving, he noticed a large amount of blood and fresh blood droplets forming a trail going westbound from the spot where Lee had been stabbed. Greene and other police officers followed the trail of blood, which, after about half a mile, ended at an apartment within a gated apartment complex. There was blood on the apartment's front porch and door handle.

Ten police officers arrived and formed a containment around the apartment to prevent anyone from entering or escaping. Two women, who identified themselves as mother and daughter, told an officer they and Montanez lived in the apartment. Over a loudspeaker, officers made public address announcements requesting that Montanez come out of the apartment. About three minutes after the first announcement, Montanez emerged from the apartment with his hands in the air. Both hands were bloody and the palm of one hand was lacerated.

An eyewitness to the stabbing told officers at a field lineup that she was fairly sure, though not certain, that Montanez was the person who had stabbed Lee. The witness testified at trial that Montanez "could be" the man who had stabbed Lee.

**PROCEDURAL HISTORY**

In April 2015, the Orange County District Attorney filed a complaint charging Montanez with premeditated and deliberate attempted murder and attempted

3

second degree robbery. On the day the complaint was filed, defense counsel expressed doubt about Montanez's competency, and the court suspended criminal proceedings pursuant to section 1368. Following a competency hearing conducted in October 2015, the trial court found Montanez to be not competent to stand trial and committed him to Patton State Hospital. Criminal proceedings were reinstated in August 2016.

Once criminal proceedings were reinstated, a preliminary hearing was conducted, which resulted in the district attorney filing an information charging Montanez in count 1 with premeditated and deliberate attempted murder (§§ 187, subd. (a), 664, subd. (a)), in count 2 with second degree robbery (§§ 211, 212.5, subd. (c)), and in count 3 with assault with a deadly weapon (§ 245, subd. (a)(1)). As to all counts, the information alleged an enhancement for infliction of great bodily injury (§§ 12022.7, subd. (a)) and, as to counts 1 and 2, alleged personal use of a deadly weapon (§§ 12022, subd. (b)(1)).

In July 2017, the jury convicted Montanez of premeditated and deliberate attempted murder (count 1) and assault with a deadly weapon (count 3). As to count 1, the jury found both enhancements to be true and, as to count 3, found the infliction of great bodily injury enhancement to be true. The jury acquitted Montanez of second degree robbery.

In May 2018, before sentencing, defense counsel again raised doubt about Montanez's competence, and the trial court again suspended proceedings pursuant to section 1368 in order to conduct a competency hearing. Following the competency hearing in July 2018, the trial court reinstated criminal proceedings.

In October 2018, the trial court sentenced Montanez to a term of nine years to life on count 1—five years for attempted murder, three years for the great bodily injury enhancement, and one year for use of deadly weapon enhancement. In January 2019, the California Department of Corrections and Rehabilitation informed the trial court that the sentence of nine years to life appeared to be unlawful and the correct sentence would be

4

an indeterminate term of life with the possibility of parole after seven years plus a determinate term of four years. In response, the trial court corrected Montanez sentence to impose an indeterminate term of life with the possibility of parole after seven years with a consecutive four year determinate term.

Montanez filed a notice of appeal after he was sentenced in October 2018 (case No. G05914) and a second notice of appeal in September 2019 (case No. G058377) after his sentence was corrected. We granted Montanez's motion to consolidate the appeals and ordered the appeals consolidated for briefing, oral argument, and decision.

## DISCUSSION

## I.

## Ineffective Assistance of Counsel

A. *Background*

Montanez argues his trial counsel was ineffective by failing to advise him to accept the pretrial plea offer by which Montanez would have received a 13-year determinate sentence. According to Montanez, reasonably competent counsel would have advised him to accept the plea offer because it was highly probable he would be convicted of premeditated and deliberate attempted murder, which carries a life sentence. Indeed, Montanez went to trial, was convicted of premeditated and deliberate attempted murder and assault with a deadly weapon, and was sentenced to an indeterminate term of life with the possibility of parole after seven years and a consecutive, determinate term of four years.

The issue of the plea offer arose during jury selection after it was announced that the prosecutor had decided to pursue a life sentence for the attempted murder charge. Montanez's counsel made a lengthy objection, which we quote in full:

"[Montanez's counsel]: Thank you. I want to register an objection to the People's reelecting to decide to pursue this as a life case instead of a 13-year-max case.

5

"The People had announced to me privately several months ago when I tried to resolve the case that there was a 13-year maximum exposure at a 13-year offer. I advised my client accordingly. He's marginally competent, but I did get him to understand that, that there was no risk for him going to trial.

"In C[ourtroom] 5 last week, the People announced again a 13-year maximum exposure. I, again, relied on that in advising my client and preparing him to make a decision as to whether or not to go to trial.

"In the middle of jury selection now I'm learning for the first time that the People are pursuing a life case with a life exposure. Grounds, I'll say it's a due process violation.

". . . And I know my client would resolve the case to 13 years if he knew this was a life exposure."

The prosecutor responded by pointing out that the information charged Montanez with premeditated and deliberate attempted murder, which had never been amended, and the life term was "not something I'm changing."

The trial court stated: "[T]he court did ask in the beginning of the conversations if it was a life case. Both of you said it was not. . . . My assumption was, when you said it was not a life case, I thought even if it's here you're not proceeding on it, and we just don't have an amended information." The prosecutor acknowledged that the trial court had asked whether this was "a life case." The court for its part acknowledged it had not studied the case or equated the premeditated and deliberate allegation with a life sentence.

The trial court invited the prosecutor and defense counsel to take a few minutes to try to resolve the case. The prosecutor and Montanez's counsel spoke off the record; when they had finished, the trial court overruled defense counsel's objection.

B. *Petition for Writ of Habeas Corpus Is the Appropriate Means to Raise a Claim of Ineffective Assistance of Counsel.*

Failure to properly advise a criminal defendant on a plea offer can constitute ineffective assistance of counsel. "The pleading—and plea bargaining—stage of a criminal proceeding is a critical stage in the criminal process at which a defendant is entitled to the effective assistance of counsel guaranteed by the federal and California Constitutions." (*In re Alvernaz* (1992) 2 Cal.4th 924, 933.) A criminal defendant is deprived of effective assistance of counsel when the defendant demonstrates that ineffective representation at the pretrial state caused him or her to proceed to trial rather than accept an offer of plea bargain. (*Id.* at p. 928.)

"[I]t is the attorney, not the client, who is particularly qualified to make an informed evaluation of a proffered plea bargain. The defendant can be expected to rely on counsel's independent evaluation of the charges, applicable law, and evidence, and of the risks and probable outcome of trial." (*In re Alvernaz, supra*, 2 Cal.4th at p. 933.) "[D]efense counsel must communicate accurately to a defendant the terms of any offer made by the prosecution, and inform the defendant of the consequences of rejecting it, including the maximum and minimum sentences which may be imposed in the event of a conviction." (*Id.* at p. 937.)

The Attorney General does not argue Montanez received effective assistance of counsel; the Attorney General argues the ineffective assistance of counsel claim cannot be resolved on direct appeal. We agree. The record on appeal does not provide an evidentiary basis on which we would be able to decide Montanez's ineffective assistance of counsel claim; instead, resolution of that claim depends on consideration of matters from outside the record. Absent from the record on appeal is any evidence of, among other things, the terms of the plea offer; defense counsel's representations made and advice given to Montanez regarding the offer; Montanez's comments, questions and concerns about the offer; whether Montanez indicated he would have accepted or rejected

7

the plea bargain offer if he knew he faced a life sentence; and representations, if any, made by the prosecutor to defense counsel. We have no evidence of what transpired during the settlement discussion held during jury selection because that discussion was not reported. Thus, we do not know whether an offer was made during that discussion, the terms of any offer, and whether counsel discussed an offer with Montanez.

In assessing Montanez's ineffective assistance of counsel claim, we have only defense counsel's lengthy objection and the prosecutor's recollection that the trial court had asked whether this was a "life case." Neither defense counsel's objection nor the prosecutor's recollection were made under oath, and, though we have no reason to doubt the veracity of counsel's representations, they are not evidence. On the record presented on appeal, Montanez has not met his burden of proving ineffective assistance of counsel by a preponderance of the evidence. (*People v. Centeno* (2014) 60 Cal.4th 659, 674.)

When, as in this case, a claim for ineffective assistance of counsel requires consideration of evidence from outside the record, the defendant should present that claim by petition for writ of habeas corpus. (*People v. Williams* (2013) 56 Cal.4th 630, 691 [ineffective assistance of counsel claims had to be raised by habeas corpus petition "because they require investigation of evidence outside the record"]; *People v. Michaels* (2002) 28 Cal.4th 486, 526 ["a claim of ineffective assistance of counsel is more appropriately decided in a habeas corpus proceeding"]; *People v. Mendoza Tello* (1997) 15 Cal.4th 264, 267 [claims of ineffective assistance of counsel based on matters outside the appellate record are "more appropriately litigated in a habeas corpus proceeding"]; *People v. Pope* (1979) 23 Cal.3d 412, 428, overruled on another ground in *People v. Berryman* (1993) 6 Cal.4th 1048, 1081, fn. 10 ["In view of the silence of the record on the reasons why no mental defense was presented, appellant's [ineffective assistance of counsel] claim would be more appropriately made in a petition for habeas corpus"].) "Because the record on appeal does not definitively establish whether or not counsel so

8

advised defendant (beyond defendant's bare assertion that he did not), or whether if defendant had been so advised, he in fact would not have entered into the apparently favorable plea agreement resulting in the elimination of one 'strike' that potentially could have subjected defendant to a life sentence, defendant's claim of ineffective assistance of counsel should be resolved in a habeas corpus proceeding rather than on appeal." (*People v. Barella* (1999) 20 Cal.4th 261, 272.)

Nothing in this opinion should be construed as commenting on the merit of a potential petition for writ of habeas corpus.

## II.

### Diversion Under Sections 1001.35 and 1001.36

In June 2018, after Montanez had been convicted, but before he was sentenced, the Legislature enacted sections 1001.35 and 1001.36, which gives the trial court discretion to grant pretrial diversion for defendants suffering certain mental health disorders. (*Frahs, supra,* 9 Cal.5th at p. 626.) Under section 1001.36, the trial court may grant diversion if the court is satisfied that all of the following criteria are met: (1) the defendant suffers from a qualifying mental disorder; (2) the disorder played a significant role in the commission of the charged offense; (3) in the opinion of a qualified mental health expert, the defendant's symptoms will respond to mental health treatment; (4) the defendant consents to diversion and waives his or her right to a speedy trial; (5) the defendant agrees to comply with treatment; and (6) the defendant will not pose an unreasonable risk of danger to public safety if treated "in the community." (§ 1001.36, subd. (b)(1)(A)–(F).) Defendants charged with certain crimes, including murder, are ineligible for diversion. (§ 1001.36, subd. (b)(2).)

Montanez argues the matter should be remanded for the trial court to determine whether to grant him diversion under section 1001.36. The Attorney General argues Montanez is not eligible for diversion because (1) sections 1001.35 and 1001.36

9

do not apply retroactively and (2) a defendant convicted of murder is ineligible for diversion.

The Attorney General's first point was resolved by *Frahs*, in which the California Supreme Court held that sections 1001.35 and 1001.36 apply retroactively to all cases not yet final on appeal. (*Frahs, supra*, 9 Cal.5th at pp. 624, 630.) Sections 1001.35 and 1001.36 therefore apply to this case.

As to the Attorney General's second point, Montanez was not charged with or convicted of murder: He was convicted of attempted murder and assault with a deadly weapon, and was acquitted of second degree robbery. None of those offenses disqualifies him from eligibility for diversion. (§ 1001.36, subd. (b)(2).) If the Legislature had meant to include attempted murder as an offense rendering a defendant ineligible for diversion, it could easily have done so. (See *People v. Jillie* (1992) 8 Cal.App.4th 960, 963 [statute expressly identifies offenses within its scope, "all of which are completed offenses. Had the Legislature meant to include attempts among the covered offenses, it could easily have done so"].)

In *Frahs*, the California Supreme Court approved a conditional reversal with a limited remand when "the record affirmatively discloses that the defendant appears to meet at least the first threshold eligibility requirement for mental health diversion—the defendant suffers from a qualifying mental disorder." (*Frahs, supra*, 9 Cal.5th at p. 640.) The record in the case, in particular the confidential reports from mental health professionals, affirmatively disclose that Montanez appears to meet the first threshold eligibility requirement for mental health diversion. The Attorney General does not contend otherwise. We therefore will conditionally reverse the judgment with a limited remand according to the procedure approved by *Frahs*.

**DISPOSITION**

The judgment is conditionally reversed. The matter is remanded for the limited purpose of considering Montanez's eligibility for diversion under section 1001.36 with the following instructions for the trial court: "'If the trial court finds that [Montanez] suffers from a mental disorder, does not pose an unreasonable risk of danger to public safety, and otherwise meets the six statutory criteria (as nearly as possible given the postconviction procedural posture of this case), then the court may grant diversion. If [Montanez] successfully completes diversion, then the court shall dismiss the charges. However, if the court determines that [Montanez] does not meet the criteria under section 1001.36, or if [Montanez] does not successfully complete diversion, then his convictions and sentence shall be reinstated.'" (*Frahs, supra*, 9 Cal.5th at p. 641.) We express no view concerning whether Montanez will be able to show eligibility or how the trial court should exercise its discretion.


FYBEL, J.

WE CONCUR:


MOORE, ACTING P. J.


GOETHALS, J.


11