Filed 9/15/22  In re Smith CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

|  |  |
|---|---|
| In re KALEAH SMITH,<br><br><br>on Habeas Corpus. | B314243<br><br>(Los Angeles County<br>Super. Ct. No. NA103415) |

On petition for writ of habeas corpus.  Petition granted.

Richard B. Lennon and Suzan E. Hier, under appointment by the Court of Appeal, for Petitioner.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General and Idan Ivri, Deputy Attorney General for Respondent.

_____

# INTRODUCTION

In 2018 Kaleah Smith pleaded no contest to first degree murder and attempted willful, deliberate, and premeditated murder. Smith later unsuccessfully sought to withdraw her plea. Her efforts to seek appellate review were also unsuccessful.

Smith filed a petition for writ of habeas corpus in the Supreme Court, arguing her trial counsel provided ineffective assistance because he did not advise her accurately about her eligibility for a youth offender parole hearing under Penal Code section 3051.[1] The Supreme Court ordered the Secretary of the Department of Corrections and Rehabilitation to show cause, returnable in this court, why Smith "is not entitled to relief based on her claim that trial counsel rendered ineffective assistance during plea negotiations either by failing to advise her or by misadvising her as to her parole eligibility under . . . section 3051, subdivision (b)(3)." We grant the petition.

# FACTUAL AND PROCEDURAL BACKGROUND

A. *Smith Pleads No Contest to Murder and Attempted Murder*

In November 2015, when Smith was 22 years old, she went with several friends to a housing project, where one of the friends shot at two people sitting on some stairs. One of the two victims died. (*People v. Alvarado* (Feb. 22, 2021, B298355 [nonpub. opn.]; *People v. Smith* (June 18, 2020, B295351) [nonpub. opn.]), review den. Sept. 9, 2020, S263561.)

---

[1] Statutory references are to the Penal Code.

The People charged Smith with first degree murder (§ 187, subd. (a)) and attempted willful, deliberate, and premediated murder (§§ 187, subd. (a), 664). The People alleged that Smith committed the offenses for the benefit of, at the direction of, or in association with a criminal street gang with the specific intent to promote, further, or assist in criminal conduct by gang members (§ 186.22, subd. (b)(1)(C)) and that a principal personally and intentionally discharged a firearm causing great bodily injury or death (§ 12022.53, subds. (d) and (e)(1)).

On January 17, 2018, the day of trial, Csaba Palfi, Smith's trial counsel, informed the court that Smith had agreed to a negotiated disposition. The court told Smith that she would be pleading "open to the sheet"[2] and that the court "ultimately" would sentence her to a prison term of 25 years to life. The prosecutor stated the charges and allegations and asked Smith a series of questions, including whether she understood that, by pleading no contest to "the entire sheet," she would be pleading no contest to all the charges and admitting all the allegations; whether she understood the sentence would be a prison term of 25 years to life; whether she wanted to give up her constitutional rights that accompany a criminal trial; and whether she was pleading no contest freely and voluntarily because she believed it was in her best interest to do so. Smith answered "Yes" to each of the court's questions.

Smith pleaded no contest to first degree murder and attempted willful, deliberate, and premeditated murder and admitted the gang and firearm allegations. The trial court found

---

[2] To "plead to the sheet" means to plead guilty to all counts and to admit all enhancement allegations. (*People v. Codinha* (2021) 71 Cal.App.5th 1047, 1059.)

3

that Smith "knowingly, understandingly, and intelligently" waived her constitutional rights and that she entered her plea "freely and voluntarily" with "an understanding of the nature and the consequences thereof."

B.      *Smith Attempts To Withdraw Her Plea*

Two months after Smith pleaded no contest, she sought to have the court relieve Palfi and to withdraw her plea. At a hearing on Smith's request to change her appointed counsel under *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*), Smith stated that Palfi's advice caused her to plead "under a mental state of duress" and that she wanted her plea to be "reconsidered, withdrew, and retracted." Recounting his conversations with Smith before the plea, Palfi told the court that he discussed with Smith her rights to go to trial and to testify and that he advised her that "to have a chance with the jury she would have to testify." Palfi stated that, after speaking with the prosecutor on the day of trial, he informed Smith the offer "was 25 to life." Palfi said he told Smith there was a "possibility of a parole hearing according to the *Franklin* case" because she "was under 23" years old when she committed the crimes.[3] Palfi said he explained to

---

3      In *People v. Franklin* (2016) 63 Cal.4th 261, at pages 277, 280 and 286, the California Supreme Court held the enactment of section 3051, "which requires the Board [of Parole Hearings] to conduct a 'youth offender parole hearing,'" mooted the defendant's "challenge to his original sentence" under the United States Supreme Court's decision in *Miller v. Alabama* (2012) 567 U.S. 460 [132 S.Ct. 2455, 183 L.Ed.2d 407], which held "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's

4

Smith that "[i]t was in that range, *Franklin* set forth, 16 years to 23 years" and that *Franklin* gave Smith the right to a hearing, but "not a guaranteed parole date," which "would be dependent on . . . how well she did in prison." Palfi said he informed Smith that, if she did her best in prison, "she would have an opportunity" for parole, but that, "if we went to trial and lost, then pretty much there was no opportunity. It would be a 50-years-plus sentence." The trial court construed Smith's statements as "a motion that says that [Palfi] ineffectively represented her in the plea negotiations and that she would not have pled." The court denied Smith's request to replace Palfi.

Five months later, Smith again asked the court to replace Palfi. At the hearing on her second request under *Marsden*, Smith stated that Palfi misrepresented the offer from the prosecutor and that she would not have accepted the offer had she known she would be pleading to first degree murder instead of second degree murder. Palfi again recounted his discussions with Smith before her plea. Palfi stated that he knew the prosecutor would try to depict Smith as "the ringleader" and that he reviewed with Smith questions the prosecutor might ask her if she testified. Palfi stated that, on the day of trial, he asked

---

prohibition on 'cruel and unusual punishments'" (*id.* at p. 465; see Stats. 2013, ch. 312, § 4). Palfi's reference to *Franklin* may have been a shorthand reference to the provisions of the legislation that enacted section 3051. "A *Franklin* proceeding gives 'an opportunity for the parties to make an accurate record of the juvenile offender's characteristics and circumstances at the time of the offense so that the Board, years later, may properly discharge its obligation to "give great weight to" youth-related factors [citation] in determining whether the offender is "fit to rejoin society."'" (*In re Cook* (2019) 7 Cal.5th 439, 449.)

Smith if she wanted to settle her case. Palfi said he told Smith the likelihood the prosecutor would agree to the same sentence she offered Zariah McCollum, one of Smith's codefendants, "was slim" to "none,"[4] but suggested they could ask if the prosecutor would agree to second degree murder, which would mean a sentence of 15 years to life. Palfi admitted he "made a mistake" and explained: "For some unknown reason, I was stuck on that, that she would be entitled to a [youth offender parole] hearing in 15 years . . . . That was the mistake. But I think the mistake has been rectified . . . by the subsequent plea that she entered into." The court found Palfi did not do "anything wrong in this case," but relieved him as Smith's counsel because of "irreconcilable conflict" between the two of them.

On September 4, 2018 Smith, represented by new counsel, filed a motion under section 1018 to withdraw her plea. Smith claimed she entered a plea "to charges and consequences that were not expected by her, explained [to her], understood by her, and all against her free will." Smith asserted she labored "under a mistake as to the seriousness of the consequences of conviction" and "felt pressured by all involved and her attorney to take the 'deal' without having sufficient time to digest and contemplate the ramifications of her plea." Smith attached correspondence between her and Palfi, including two memoranda Palfi had written her.

---

[4]     As part of her plea bargain, McCollum agreed to testify for the prosecution, which she did in the trial of Smith's other codefendant, Alejandro Alvarado. A jury convicted Alvarado of first degree murder and attempted willful, deliberate, and premeditated murder and found firearm allegations true. (*People v. Alvarado* (Feb. 22, 2021, B298355) [nonpub. opn.].)

In the first memorandum, which Palfi wrote on January 17, 2018 (the day of Smith's plea), Palfi summarized his assessment of the strengths and weaknesses of the case. Palfi stated Smith was "facing basically two life terms" and suggested asking the prosecutor to settle the case by having Smith plead to second degree murder and admit the gang allegation. Palfi told Smith that, if a jury convicted her of first degree murder and attempted murder, she "would be looking at 50 years and that is without the gun or gang enhancements." Palfi stated: "However, the bright spot in all of this is a new case . . . which directs the Board of Prisons[5] to hold a parole hearing on cases as yours to determine when you might or would get out. There are NO promise[s] of release[,] just a hearing after 15 years, that could be at 85% or 100% of your time and I am not sure. Why? Because it is a new law on the books and everyone is scrabbling to figure it out."

In the second memorandum, which Palfi wrote approximately six months later, Palfi recounted the circumstances surrounding Smith's decision to plead no contest: Palfi informed Smith the prosecutor would only accept a plea to first degree murder and an admission to the gang allegation, "for a total of thirty-five years." Palfi told Smith that he "wasn't certain" when she would be eligible for a parole hearing under "these circumstances." After the plea, Palfi called Smith's husband and "mistakenly" told him that Smith had pleaded to second degree murder and that she would be eligible for a parole hearing in 15 years. When Palfi went to see Smith a few weeks later, he made the same mistake of "conflating" the right to a

---

[5]     The Board of Parole Hearings replaced the Board of Prison Terms in July 2005. (See § 5075, subd. (a); *In re Shaputis* (2008) 44 Cal.4th 1241, 1245, fn. 1.)

7

parole hearing with Smith's sentence of "25 to life" and told Smith that she had pleaded to second degree murder.

At the hearing on Smith's motion to withdraw her plea under section 1018, Palfi testified that, on the day of the plea, he spoke to the prosecutor and conveyed to Smith the offer of pleading to first degree murder and accepting a sentence of 25 years to life. Palfi said Smith "absolutely" was "cognizant of" the prosecutor's offer. Palfi recalled that, when he went to see Smith after the plea, "one of the first things" she told him was "I pled to 25. I plead to first degree."

Smith testified that, when Palfi advised her the "best that we could do" was for her to plead no contest to second degree murder for a sentence of 15 years, plus 10 years for the gang enhancement, she told him she "would take that." Smith stated Palfi never informed her that the prosecutor rejected the defense's offer of second degree murder. Smith explained that, when the prosecutor told her she would be sentenced to 25 years to life, she thought that meant the sentence was a term of 15 years to life, plus 10 years for the gang enhancement.

The trial court recalled that, when Smith entered her plea, the court found her plea was "knowing, voluntary, and intelligently made." The court stated, "There's nothing that's been presented to change my mind on that." The court found that Palfi made "quite clear" to Smith the prosecutor's offer required her to plead to first degree murder and that, as evidenced by the "consistent things" she said after the plea, Smith "seemed very clear on it." The court concluded that, while Smith had "some belief from somewhere that it was second degree" murder, she consistently stated her sentence "was at least 25 years." The court denied Smith's motion to withdraw her

8

plea and sentenced her under the plea agreement to a prison term of 25 years to life on the murder conviction. The court also imposed and stayed execution of a life term on the attempted murder conviction and terms on the firearm and gang enhancements. The court also imposed assessments, a booking fee, a restitution fine, and a victim restitution award.[6]

### C.    *Smith Seeks Appellate Relief*

Smith filed a notice of appeal and a statement requesting a certificate of probable cause under section 1237.5. Smith stated she "was sentenced to 25 years to life for murder in the first degree due to the mistakes of Mr. Palfi's errors" and was misadvised about the terms of her plea. The trial court denied Smith's request for a certificate of probable cause, finding she had "no basis for appeal."

Smith then filed a petition for writ of mandate in this court, asking us to direct the trial court to issue a certificate of probable cause to allow her to appeal the denial of her motion to withdraw her plea. We denied the petition for writ of mandate, and the Supreme Court denied Smith's petition for review. (*Smith v. Superior Court* (July 11, 2019, B298049), review den. Aug. 21, 2019, S256907.)

Smith next filed a petition for writ of habeas corpus in this court, contending Palfi provided ineffective assistance. Smith asserted Palfi's erroneous or incomplete advice caused her to

---

[6]    Smith appealed the order imposing the assessments, booking fee, restitution fine, and victim restitution award. We affirmed, and the Supreme Court denied Smith's petition for review. (*People v. Smith, supra*, B295351; *People v. Smith, supra*, S263561.)

9

plead no contest, which she would not have done had Palfi properly advised her that section 3051 applied to her even if she decided to go to trial. We summarily denied Smith's petition. (*In re Smith* (June 17, 2020, B306272).)

Finally, Smith filed a petition for writ of habeas corpus in the Supreme Court, making the same claims she made in the petition for writ of habeas corpus she filed in this court.[7] The Secretary filed an informal response, arguing that the petition was procedurally barred and that Palfi did not provide ineffective assistance. The Supreme Court directed the Secretary to show cause, returnable before this court, why Smith was not entitled to relief based on her claim Palfi failed to advise her or misadvised her about her parole eligibility under section 3051, subdivision (b)(3). (*In re Kaleah Smith on Habeas Corpus* (August 11, 2021, S266965).)

D. *This Court Orders a Referee To Conduct an Evidentiary Hearing*

The Secretary filed a return to Smith's petition, and Smith filed a traverse. After reviewing the parties' submissions, we directed the Presiding Judge of the Los Angeles County Superior Court to appoint a referee to conduct an evidentiary hearing and make recommended findings of fact on what Palfi advised Smith about the terms of her plea, whether Smith understood at the time of her plea she was pleading to first degree murder with a sentence of 25 years to life, what Palfi advised Smith about

---

[7] Smith also claimed the attorney who represented her at the sentencing hearing (not Palfi) provided ineffective assistance by failing to object to the court's imposition of a $3,106.50 victim restitution award.

10

section 3051 if Smith pleaded no contest to first degree murder, and what Palfi advised Smith about section 3051 if a jury convicted her on all the charges.

The referee conducted an evidentiary hearing. Smith and the prosecutor testified, but Palfi had died before the hearing. The referee made the following findings: (1) Palfi advised Smith the prosecutor rejected Smith's offer to plead no contest to second degree murder, and Palfi conveyed to Smith the prosecutor's offer to have Smith plead to all the charges on the "sheet" and receive a sentence of 25 years to life; (2) Smith agreed to "take the deal" and understood that "she was pleading to first degree murder at the time of the plea" and that her sentence would be 25 years to life; (3) there "is no way to know" what Palfi "might have testified to telling Smith" about section 3051 if Smith pleaded no contest to first degree murder, although (the court inferred) if Palfi said anything on this topic, "it would have logically been different than the parole hearing date for second degree murder"; and (4) Smith did not recall Palfi "saying anything about her eligibility under section 3051" if a jury convicted her on all the charges, and Palfi did not testify about this issue at the hearing on Smith's motion to withdraw her plea and "now is unavailable."

## DISCUSSION

### A. *Smith's Petition Is Not Procedurally Barred*

The Secretary contends that, because Smith "fully litigated" her claim of ineffective assistance of counsel in her motion to withdraw her plea and the trial court denied her

11

request for a certificate of probable cause under section 1237.5,[8] Smith may not "raise a habeas claim alleging ineffective assistance of counsel in connection with a plea negotiation in order to circumvent the denial of a certificate of probable cause on the same claim." Smith contends that the allegations in her petition differ from those in her motion to withdraw her plea and that, because the record of the motion to withdraw the plea did not reflect whether Palfi had a tactical reason for his omissions, the petition provides an opportunity to address those issues.

The decision by the Supreme Court to issue an order to show cause in this case disposes of the Secretary's procedural-bar argument. The "issuance of an order to show cause indicates the Supreme Court has determined the claim is not procedurally barred." (*In re Smith* (2020) 49 Cal.App.5th 377, 386; see *In re Taylor* (2019) 34 Cal.App.5th 543, 554 ["'[w]ere there a valid procedural bar, we would have expected [our state] Supreme Court to deny the petition rather than issuing an order to show cause returnable before this court'"]; *In re Ramirez* (2019) 32 Cal.App.5th 384, 406, fn. 11 [same].) The Secretary made the same procedural argument in her informal response to Smith's petition for writ of habeas corpus before the Supreme Court, and

---

[8]    Section 1237.5 states: "No appeal shall be taken by the defendant from a judgment of conviction upon a plea of guilty or nolo contendere . . . except where both of the following are met: [¶] (a) The defendant has filed with the trial court a written statement . . . showing reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings. [¶] (b) The trial court has executed and filed a certificate of probable cause for such appeal with the clerk of the court." (See *People v. Stamps* (2020) 9 Cal.5th 685, 694; *People v. Johnson* (2009) 47 Cal.4th 668, 676.)

12

the Supreme Court issued an order to show cause.  We see no reason to question the Supreme Court's implicit ruling there is no procedural bar to hearing Smith's petition.  (See *Maas v. Superior Court* (2016) 1 Cal.5th 962, 974 ["[i]f the court determines that the petition states a prima facie case for relief on a claim that is not procedurally defective, the court issues the writ of habeas corpus, or an order to show cause"].)[9]

Moreover, because "claims of ineffective assistance are often more appropriately litigated in a habeas corpus proceeding, the rules generally prohibiting raising an issue on habeas corpus that was, or could have been, raised on appeal [citations] would not bar an ineffective assistance claim on habeas corpus."  (*People v. Tello* (1997) 15 Cal.4th 264, 267; see *In re Robbins* (1998) 18 Cal.4th 770, 814, fn. 34 [argument that a claim should have been raised on appeal or that a claim was raised and rejected on appeal does not apply "to claims of ineffective assistance of trial counsel even if the habeas corpus claim is based solely upon the appellate record"].)  Smith did not raise the issue of Palfi's incomplete or inaccurate advice about section 3051 in her motion to withdraw her plea.  Indeed, as stated in our order for an evidentiary hearing, "'no inquiry was made'" at the hearing on Smith's motion to withdraw her plea into whether Palfi advised Smith section 3051 applied.  And the trial court did not make any findings on whether Palfi failed to advise, or misadvised, Smith

---

[9]     This procedural history distinguishes this proceeding from *In re Chavez* (2003) 30 Cal.4th 643 and *In re Brown* (1973) 9 Cal.3d 679, disapproved on another ground by *People v. Mendez* (1999) 19 Cal.4th 1084, 1097, the two cases on which the Secretary principally relies.  The Supreme Court in those cases did not issue an order to show cause.

on the applicability of section 3051, nor did the court make any rulings on whether Palfi's representation was constitutionally ineffective.  Contrary to the Secretary's argument, Smith did not fully litigate her claim Palfi rendered ineffective assistance when he advised her about the ramifications of pleading no contest versus going to trial.  A habeas proceeding gives Smith the opportunity and ability to supplement the record with evidence Palfi gave incomplete or incorrect advice about section 3051.  (See *People v. Hoyt* (2020) 8 Cal.5th 892, 958 ["[u]sually, 'ineffective assistance [of counsel claims are] more appropriately decided in a habeas corpus proceeding'"]; *People v. Johnson* (2009) 47 Cal.4th 668, 684 ["Generally, if it cannot be determined from the record whether counsel had a reasonable strategic basis for acting or failing to act in the manner challenged, a claim of ineffective assistance 'is more appropriately decided in a habeas corpus proceeding.'"]; *People v. Cotton* (1991) 230 Cal.App.3d 1072, 1083 [where a "claim of ineffective assistance of counsel relies on matters outside the appellate record, a petition for habeas corpus is a proper vehicle for getting the matter before the court"].)

### B.      *Trial Counsel Rendered Ineffective Assistance*

#### 1.      *Applicable Law*

##### a.      *Ineffective Assistance of Counsel*
"To demonstrate ineffective assistance of counsel," a defendant "'must show that counsel's performance was deficient, and that the deficiency prejudiced the defense.'"  (*People v. Johnsen* (2021) 10 Cal.5th 1116, 1165; see *In re Long* (2020) 10 Cal.5th 764, 773 [defendant must show counsel's action or

14

omission "'fell below an objective standard of reasonableness' [citations] in light of 'the professional norms prevailing when the representation took place'" and "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different'"].)  The two-part test under *Strickland v. Washington* (1984) 466 U.S. 668 [104 S.Ct. 2052, 80 L.Ed.2d 674] (*Strickland*) "applies to challenges to guilty pleas based on ineffective assistance of counsel." (*Hill v. Lockhart* (1985) 474 U.S. 52, 58 [106 S.Ct. 366, 88 L.Ed.2d 203]; see *In re Alvernaz* (1992) 2 Cal.4th 924, 934 ["in order successfully to challenge a guilty plea on the ground of ineffective assistance of counsel, a defendant must establish not only incompetent performance by counsel, but also a reasonable probability that, but for counsel's incompetence, the defendant would not have pleaded guilty and would have insisted on proceeding to trial"]; *People v. Montoya* (2021) 68 Cal.App.5th 980, 998 [same].)

The standard for judging counsel's representation "'is a most deferential one.' [Citation.]  We 'must indulge a "strong presumption" that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight.' [Citation.] 'Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge.' [Citation.]  Accordingly, we must 'reconstruct the circumstances of counsel's challenged conduct, and . . . evaluate the conduct from counsel's perspective at the time.'" (*In re Long, supra,* 10 Cal.5th at pp. 773-774; accord, *People v. O'Hearn* (2020) 57 Cal.App.5th 280, 294.)  The defendant "'must overcome the

presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."'" (*In re Gay* (2020) 8 Cal.5th 1059, 1073.)

"Because a petition for a writ of habeas corpus is a collateral attack on a presumptively final criminal judgment," the defendant "bears the burden of proving his entitlement to relief by a preponderance of the evidence.  [Citations.]  The referee's factual findings are 'entitled to great weight where supported by substantial evidence.'  [Citations.]  Those findings are not, however, conclusive, and 'we can depart from them upon independent examination of the record even when the evidence is conflicting.'  [Citations.]  The ultimate responsibility for determining whether [the petitioner] is entitled to relief rests with" the reviewing court.  (*In re Gay*, *supra*, 8 Cal.5th at pp. 1072-1073; accord, *In re Lewis* (2018) 4 Cal.5th 1185, 1191.)

b.      *Section 3051*

Section 3051, subdivision (b)(3), provides:  "A person who was convicted of a controlling offense that was committed when the person was 25 years of age or younger and for which the sentence is a life term of 25 years to life shall be eligible for release on parole at a youth offender parole hearing during the person's 25th year of incarceration."  (See *People v. Franklin* (2016) 63 Cal.4th 261, 277 (*Franklin*).)  "As originally enacted, section 3051 referred to offenses committed before the offender was 18 years old.  The age was raised to 23 years by an amendment that became effective on January 1, 2016."  (*In re Trejo* (2017) 10 Cal.App.5th 972, 981, fn. 6; see Stats. 2015, ch. 471, § 1.)  "The section was later extended to offenders who were 'under age 26 when they committed their crimes.'"  (*People*

*v. Benzler* (2021) 72 Cal.App.5th 743, 748; see Stats. 2017, ch. 675, § 1.)

Thus, at the time of Smith's plea, section 3051 provided that defendants like Smith who were under 23 years old when they committed their crimes would be entitled to a youth offender parole hearing during their 25th year of incarceration. The Supreme Court explained that, for "those juvenile offenders eligible for youth offender parole hearings, the provisions of Senate Bill No. 260," which added section 3051 to the Penal Code, "are designed to ensure they will have a meaningful opportunity for release no more than 25 years into their incarceration." (*Franklin*, *supra*, 63 Cal.4th at p. 277; see *In re Trejo, supra*, 10 Cal.App.5th at p. 981.) Section 3051 thus "effectively reforms the parole eligibility date of a juvenile offender's original sentence so that the longest possible term of incarceration before parole eligibility is 25 years." (*Franklin*, at p. 281; see *In re Cook* (2019) 7 Cal.5th 439, 449 [same]; *People v. Scott* (2016) 3 Cal.App.5th 1265, 1281 ["section 3051 has abolished de facto life sentences" "by virtue of its provision for mandatory parole eligibility hearings after no more than 25 years in prison"].)

### 2. *Palfi Had a Duty Not To Misadvise Smith About Her Parole Eligibility*

Palfi may not have had an affirmative duty to advise Smith that section 3051 applied to her convictions, whether by plea or by jury verdict. (See *People v. Reed* (1998) 62 Cal.App.4th 593, 597 [defense counsel's failure to inform the defendant about the limit on how much credit he could earn to reduce his time in prison "was not ineffective assistance"]; *id.* at p. 598 ["'parole eligibility is a collateral rather than a direct consequence of a

17

guilty plea,'" and "'a criminal defendant's 'actual knowledge of consequences which are collateral to the guilty plea is not a prerequisite to the entry of a knowing and intelligent plea'"]; see also *People v. Barella* (1999) 20 Cal.4th 261, 272 ["a defendant is not entitled to withdraw or set aside a guilty plea on the ground that the trial court, in accepting the plea, failed to advise the defendant of a limit on good-time or work-time credits available"].)  But Palfi did have a duty not to misadvise Smith about her eligibility for parole if she rejected the prosecution's offer.  (See *People v. Huynh* (1991) 229 Cal.App.3d 1067, 1080, 1083 [defense counsel's incorrect statement in court that the defendant would be eligible for parole in seven years instead of 11 years four months, combined with the defendant's testimony he would not have waived his right to a jury trial had he been properly advised, established "'a prima facie case for relief on habeas corpus'"]; see also *People v. Johnson* (1995) 36 Cal.App.4th 1351, 1355, 1357 [defense counsel's miscalculation of the defendant's maximum potential sentence by 11 years before the defendant pleaded no contest was "a dereliction of her duty to ensure that defendant entered his plea with 'full awareness of the relevant circumstances and the likely consequences of his action'"]; *People v. McCary* (1985) 166 Cal.App.3d 1, 9 ["defendant's counsel did not meet the threshold standards of competency in failing to determine the enhancement was invalid and to inform defendant of this fact in the course of plea negotiations"]; see also *People v. Ogunmowo* (2018) 23 Cal.App.5th 67, 77 ["[a]ffirmatively misadvising a client that he will not face immigration consequences as a result of a guilty plea in a drug trafficking case—when the law states

18

otherwise—is objectively deficient performance under prevailing professional norms"].)

Palfi told Smith that, if she accepted the plea offer, she would have an opportunity for early parole under the "new law," but that if she went to trial and lost she would essentially ("pretty much," in Palfi's words) not have that opportunity. This (mis)advice was incorrect. In fact, Smith would have had the same opportunity for a youth offender parole hearing in 25 years under section 3051 whether she pleaded no contest to the charges or was convicted by a jury on those charges. Palfi's erroneous advice "fell below an objective standard of reasonableness under prevailing professional norms." (*In re Alvernaz*, *supra*, 2 Cal.4th at p. 937; see *ibid.* & fn. 6 ["defense counsel must communicate accurately to a defendant the terms of any offer made by the prosecution" and "inform the defendant of the consequences of rejecting it, including the maximum and minimum sentences which may be imposed in the event of a conviction"].)[10]

---

[10] The Supreme Court cautioned that "a defense attorney's simple misjudgment as to the strength of the prosecution's case, the chances of acquittal, or the sentence a defendant is likely to receive upon conviction, among other matters involving the exercise of counsel's judgment, will not, without more, give rise to a claim of ineffective assistance of counsel." (*In re Alvernaz*, *supra*, 2 Cal.4th at p. 937.) Palfi's misstatement about Smith's ineligibility for parole if a jury convicted her was not a misjudgment about Smith's likely sentence; it was contrary to a law passed two years before Smith agreed to plead no contest. (See *People v. McCary*, *supra*, 166 Cal.App.3d at p. 12 ["""There is nothing strategic or tactical about ignorance."""].)

19

### 3. *Smith Has Shown Prejudice*

"In determining whether a defendant, with effective assistance, would have accepted [or, as here, rejected] the offer, pertinent factors to be considered include: whether counsel actually and accurately communicated the offer to the defendant; the advice, if any, given by counsel; the disparity between the terms of the proposed plea bargain and the probable consequences of proceeding to trial, as viewed at the time of the offer; and whether the defendant indicated he or she was amenable to negotiating a plea bargain." (*In re Alvernaz*, *supra*, 2 Cal.4th at p. 938; accord, *In re Resendiz* (2001) 25 Cal.4th 230, 253; *People v. Breslin* (2012) 205 Cal.App.4th 1409, 1421.) A defendant's "self-serving statement . . . is insufficient in and of itself to sustain the defendant's burden of proof as to prejudice" and "must be corroborated independently by objective evidence." (*Alvernaz*, at p. 938; see *Resendiz*, at p. 253; *Breslin*, at p. 1421.)

Smith presented sufficient evidence of prejudice. She stated in her declaration she would have chosen "to go to trial" and "profess" her innocence had she known she would be eligible for a parole hearing after 25 years "no matter how long the sentence" she received from the court. And objective evidence corroborated Smith's declaration: Although the referee found Palfi correctly communicated the prosecutor's offer to Smith, the first prejudice factor under *Alvernaz*, the advice Palfi gave Smith, the second *Alvernaz* factor, supported a finding of prejudice. As discussed, Palfi's misstatement that Smith would lose her chance for a youth offender parole hearing if she lost at trial was incorrect as a matter of law and created an illusory advantage to accepting the plea offer.

Moreover, the disparity between "the terms of the proposed plea bargain and the probable consequences of proceeding to trial," the third *Alvernaz* factor, was insignificant. Because under either scenario Smith would have been entitled to a youth offender parole hearing during the 25th year of her incarceration (see *In re Cook, supra,* 7 Cal.5th at p. 449), the plea bargain offered little tangible benefit.[11] Had Palfi not misinformed Smith that a prison sentence after conviction by a jury would be more than 50 years, without the possibility of an earlier parole hearing, it was reasonably probable Smith would not have accepted the plea offer.[12] (See *In re Vargas* (2000) 83 Cal.App.4th 1125, 1141 [defendant "presented credible evidence supporting his statements that his motivation in accepting the plea agreement was based upon" trial counsel's "misrepresentations and coercive statements"]; *People v. Johnson, supra,* 36 Cal.App.4th at pp. 1355-1356, 1358 [trial counsel's miscalculation by 11 years of the defendant's maximum potential sentence had he gone to trial "was a substantial inducement in his decision to plead nolo contendere"]; *People v. McCary, supra,* 166 Cal.App.3d at pp. 8, 9, 11 [defendant "was prejudiced" by trial counsel's failure "to ascertain" he "was not legally subject to the charged enhancement" because the prosecutor's promise to

---

[11] Regardless of her aggregate prison sentence, if the Board denies Smith parole at her first youth offender parole hearing, the Board will "set the time for a subsequent youth offender parole hearing in accordance with" section 3041.5, subdivision (b)(3). (§ 3051, subd. (g).)

[12] To the extent the fourth *Alvernaz* factor is relevant in a case where the defendant accepts a plea agreement, Smith demonstrated she was amenable to negotiating a plea bargain.

dismiss the enhancement "had no value whatsoever"]; cf. *In re Resendiz, supra,* 25 Cal.4th at p. 254 [defendant failed to show prejudice because the plea agreement offered him a benefit of six months of incarceration and three years of probation, compared to five years four months of incarceration "had the prosecution chosen to seek maximum penalties"].)

The Secretary argues that "admitting culpability via a guilty plea in a murder case may be an important factor in favor of granting parole" and that "the operative question under the second *Strickland* prong is whether it is reasonably probable that [Smith] would have given up the possibility that a no contest plea would make her a better parole candidate in exchange for the possibility that she would be acquitted at trial." That is not the question. Palfi never told Smith pleading no contest would improve her odds or prospects before the Board of Parole Hearings.[13] The question is what Smith would have done had Palfi not misstated her parole eligibility under section 3051, not what Smith would have done had Palfi not misadvised her about section 3051 *and* told her about factors the Board might consider in granting or denying parole. (See *Hill v. Lockhart, supra,* 474 U.S. at p. 59 [the "'prejudice'" requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process"]; *In re Resendiz, supra,* 25 Cal.4th at p. 253 ["a defendant who pled guilty demonstrates prejudice caused by counsel's incompetent performance in advising him to enter the plea by establishing that a reasonable probability exists that, but for counsel's incompetence, he would

---

[13] In fact, when describing the parole process, all Palfi told Smith was that a "parole date" would depend on "how well she did in prison."

not have pled guilty and would have insisted, instead, on proceeding to trial"].)

Nor would advising Smith to accept responsibility for her crimes and admit her guilt necessarily help her in a parole hearing 25 years later. Although one of the circumstances tending to show suitability for parole is "demonstration of remorse" (*In re Shaputis* (2008) 44 Cal.4th 1241, 1257; see *In re Lawrence* (2008) 44 Cal.4th 1181, 1203), acceptance of responsibility "'works in favor of release "[n]o matter how longstanding or recent it is," so long as the inmate "genuinely accepts responsibility."'" (*In re Twinn* (2010) 190 Cal.App.4th 447, 467; see *In re Barker* (2007) 151 Cal.App.4th 346, 368-369; *In re Elkins* (2006) 144 Cal.App.4th 475, 495.) Thus, Smith did not need to admit culpability for her crimes in 2018 to show her suitability for parole in 2043. (See *Lawrence*, at p. 1226 [in light of the remorse petitioner expressed years after the crime and "other factors establishing suitability" for parole, the gravity of the petitioner's commitment offense provided "no support for the Governor's conclusion that petitioner is unsuitable for parole at the present time"].)[14]

---

[14] *In re Tapia* (2012) 207 Cal.App.4th 1104, on which the Secretary relies, is distinguishable. In that case the defendant refused to identify his coconspirator until the day of his parole hearing, which the court found constituted "an ongoing threat to public safety" over many years. (*Id.* at p. 1112.) As discussed, Smith can attempt to show she is suitable for parole in 25 years by (among other things) genuinely accepting responsibility; she just doesn't have to accept responsibility at the time and by way of a plea. (See, e.g., *In re Twinn, supra*, 190 Cal.App.4th at pp. 470-471 [petitioner was entitled to parole even though he did

The Secretary also argues that, given "McCollum's cooperation with police," Smith's "likelihood of being acquitted was extremely low." According to the Secretary, "Palfi would have explained that [Smith's] best chance to be released on parole . . . was to plead guilty and demonstrate rehabilitation, and it is likely [Smith] would have accepted that advice." Again, nothing in the record supports the Secretary's argument that Palfi would have explained to Smith the benefits of accepting responsibility early or that Smith would have decided not to require the People to prove their case beyond a reasonable doubt to a jury. (See *Lee v. United States* (2017) ___ U.S. ___ [137 S.Ct. 1958, 1966-1967, 198 L.Ed.2d 476] [when "the respective consequences of a conviction after trial and by plea" are, "from the defendant's perspective, similarly dire, even the smallest chance of success at trial may look attractive"]; cf. *People v. Rodriguez* (2021) 68 Cal.App.5th 301, 311-312 [under section 1473.7 "prejudice is established if the movant shows 'there is a reasonable probability [he or she] would not have pleaded guilty—and would have risked going to trial (even if only to figuratively throw a "Hail Mary")—had [he or she] known the guilty plea would result in mandatory and dire immigration consequences'"].) Because Palfi provided ineffective assistance, Smith is entitled to withdraw her plea. (See *People v. McCary*, *supra*, 166 Cal.App.3d at p. 7 ["[w]here a defendant has been denied the effective assistance of counsel in entering a plea of guilty, he is entitled to reversal and

not acknowledge his involvement in, or accept responsibility for, his role in the murder until almost 20 years after the crime].)

24

an opportunity to withdraw his plea if he so desires"]; see also *People v. Huynh, supra,* 229 Cal.App.3d at p. 1084 [if the superior court finds that the defendant "was incorrectly advised by defense counsel about parole eligibility . . . and that a reasonable defendant would not have submitted the case to court trial as he did had he been properly advised [citation], then defendant will be entitled to withdraw from the terms of the submission"].)

## DISPOSITION

The petition is granted. The trial court is directed to allow Smith to withdraw her plea of no contest and enter a different plea.


SEGAL, J.

We concur:


PERLUSS, P. J.


WISE, J.*

---

\* Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.